**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| RACHEL J. KAPLAN | : | CASE NO. 06-41771-JBR |
| DEBTORS | : | |

**MEMORANDUM OF DECISION ON MOTION FOR RELIEF**

This matter came before the Court for an evidentiary hearing on the Motion for Relief of

Deutsche Bank National Trust Company, as Trustee for Citigroup Mortgage Loan Trust

Company, Series 2005-0pt-3, Asset-backed Pass-through Certificates [docket #17], in which the

Movant seeks the right to commence eviction proceedings against the Debtor, and the Debtor's

Opposition thereto [docket #21].  For the reasons set forth herein, the Motion is ALLOWED

except as to the Movant's request to waive the ten day stay imposed by Fed. R. Bankr. P.

4001(a)(3) which is DENIED.

The Movant contends that it completed the foreclosure sale of the property, which is the

Debtor's residence, prior to the Debtor's filing of her Chapter 13 petition.  In her written

Opposition, the Debtor argues the sale was not consummated, principally because the

memorandum of sale has not been recorded in the Registry of Deeds.  At the non-evidentiary

hearing, the Debtor supplemented her opposition to allege that, at the time of the foreclosure she

had $70,000 of equity in the property and to question whether the auction occurred prior to the

scheduled time since, when she arrived at the property shortly after the scheduled time, there was

no one at the property.[1]  The Court permitted her time to conduct discovery and scheduled the

---

[1]At various points during the two hearings, the Debtor's counsel questioned whether the
sale occurred after the Debtor filed bankruptcy and even whether the sale took place at all.  He
introduced absolutely no evidence to support either allegation, however.

evidentiary hearing on the issue of whether the sale was premature or conducted after the

automatic stay went into effect.  The following relevant chronology indicates it was neither too

early nor too late.

The Debtor deposed both the auctioneer and the individual representing the Movant at

the auction.  At the hearing, those deposition transcripts , along with two exhibits to those

depositions, were introduced without objection.  The first of those exhibits [docket # 37] is the

auctioneer's bid sheet.  According to the bid sheet, which the auctioneer kept in the ordinary

course, the auctioneer, along with his father who was to act as a witness,[2] arrived at the property

at 1:55, the auction commenced at 2:00 and was concluded at 2:08, and the memorandum of sale

was signed at 2:10.  At his deposition [docket #39], the auctioneer testified he arrived at the

property "two minutes before 2 p.m."  (Schaetzke Tr. at 8).  Although he could not recall

whether he arrived before the Creditor's representative, the auctioneer placed the time of their

arrival close to 2:00 p.m. (Schaetzke Tr. at10 "The agent for Harmon Law Office, he either

arrived shortly before or after I did.  I don't really recall, but we were close to the 2:00 hour, but

at least 1:55." ).  He further testified that he began reading the legal announcement of the auction

at 2:00 p.m.  The auctioneer also testified that he believed that he was gone from the premises by

about 2:20 p.m.  The Court notes that when the auctioneer was asked to establish these times, he

was testifying only from memory.  The Court finds nothing unusual in the auctioneer's inability

to recall the precise arrival and departure times reflected on the bid sheet and memorandum of

sale.

---

[2]The auctioneer testified the witness traveled with him to the property to be present for
the entry onto the property. (Schaetke Tr. At 38).

The second exhibit [docket # 38] is entitled "Memorandum of Terms and Conditions of

Sale" and is signed by both the auctioneer and the Movant's representative.  The Memorandum

indicates that it was signed at "2:10 PM."  The Movant's representative testified at his deposition

[docket #40] that he wrote the time on the memorandum after checking the time on his cell

phone.  (Barta Tr. at 29).

At the hearing the Debtor testified that she was out of the office to attend a business

lunch with a client when she received a call from one of her coworkers at 2:00 p.m.  (12/7/06 Tr.

at 23 and 27; docket #42).  Her coworker told her there was a group of people in front of the

Debtor's house and that there was an auction sign.  The Debtor testified that she was ten minutes

away from her house when she got the call and that she asked the person driving to hurry to her

house.  (Tr. at 23).  When she got to the house at 2:10 p.m., which was the time shown on her

cell phone, there was no one there.  (Id.).  She then went to her office and called her attorney.

(Id.)

According to the Court's case management/electronic case filing system ("CM/ECF"), on

September 7, 2006 at 2:37 p.m., EDT, the Debtor's attorney electronically filed the Debtor's

Chapter 13 petition.[3]  Her petition was filed approximately 27 minutes *after* the foreclosure was

concluded.[4]

---

[3]The filing was a so-called "skeletal" filing; only the three page bankruptcy petition was
filed.  A skeletal filing triggers the automatic stay under 11 U.S.C. § 362.

[4]The Debtor testified she knew the property was scheduled to be auctioned on September
7, 2006 at 2:00 p.m. and that knowledge prompted her to go to her attorney's office two weeks
prior to the scheduled foreclosure and give him all her information.  (Tr. at 25).  She testified
that she had an appointment with her attorney on August 25th but because he was not available,
she called him that evening and by telephone, they reviewed the paperwork she left at his office
earlier in the day.  (Id.).  She believed that her attorney was going to file an emergency petition

At the nonevidentiary hearing in this matter, the Debtor's counsel had presented a handwritten note purporting to be from an individual who was in a building across the street at the time of the auction.[5]  The individual's statement was intended to call into question the accuracy of the timetable given by both the auctioneer and the Movant's representative.  The Debtor, however, did not proffer any evidence challenging the timetable at the evidentiary hearing.  Moreover, the Debtor's counsel did not have the witness statement with him at the evidentiary hearing, and although counsel was given the opportunity to submit it after the hearing, which was held on December 7, 2006, to date he has not done so.[6]

The Debtor had also argued that the sale was not properly conducted because an Internet site advertizing the sale listed the notice of sale under the wrong town.  The Debtor's counsel did argue that an advertisement for the auction posted on an Internet web site placed the advertisement of the foreclosure under the wrong town.  He failed to establish that the mortgagee was responsible for this advertising and argued instead that the presence of only one unrelated bidder at the auction was evidence that the mistake had an impact on the sale.  The Court declines to make such a finding on the record before it.  Moreover the parties agreed that the

---

for her and thus she "assumed that everything was taken care of...." (Id.).  The Court is troubled by counsel's inaction in the face of foreclosure.

[5]The Debtor testified that the building where she works is across the street from the property.  It appears that the note was written by one of the Debtor's co-workers.

[6]The Court reviewed the tape of the nonevidentiary hearing at which the Debtor's counsel had shown the Court the handwritten statement, signed under pains and penalties of perjury by an individual identified as Deborah Lincoln.  The essence of the handwritten statement was that some people arrived at the property, put out an auction flag, and left after a few minutes, at approximately 2:05 p.m..  Even if the Debtor's counsel had introduced acceptable evidence of these facts, they are not inconsistent with the timetable established by the Movant and corroborated by the Debtor's own testimony.

notice of the foreclosure sale, which was published in accordance with state law and shown to the Court at the non-evidentiary hearing, was correct.

Similarly her counsel's argument at the non-evidentiary hearing that the Debtor had approximately $70,000 in equity which was not reflected in the auction price does not require this Court to find that the auction was invalid.  Although it is unclear on what the Debtor based her assertion, under Massachusetts law, the inadequacy of price, without more, "will not invalidate a sale unless it is so gross as to indicate bad faith or lack of reasonable diligence." *States Resources Corp. v. The Architectural Team, Inc.*,  433 F.3d 73, 81(1st Cir. 2005)(internal citations and quotations omitted).

Finally the Debtor argues that the sale was not consummated as a matter of law because the memorandum of sale has not been recorded.  This argument is incorrect.  Property sold at foreclosure under a power of sale in a mortgage terminates a mortgagor's right to redeem the property.  M.G.L. c 244, § 18.  *Williams v. Resolution GGF OY*, 417 Mass. 377, 384, 630 N.E.2d 581, 585 (1994)("The execution of the memorandum of sale terminated the plaintiffs' equity of redemption.").  *See also In re Crichlow*, 322 B.R. 229, 234-35 (Bankr. D. Mass. 2004).  ("If a foreclosure sale is fairly conducted and there is no defect in the proceedings, the right of the intervener to redeem is gone when the contract of sale was made with the purchaser at auction.").  Thus, absent any impropriety in the foreclosure proceeding, the property is "sold" when the memorandum of sale is executed.  *In re Mellino*, 333 B.R. 578, 586 (Bankr. D. Mass. 2005).

Because the Debtor has failed to prove any deficiencies in the foreclosure sale, the sale was complete by 2:10 p.m. when the memorandum of sale was executed and therefore the later filing of her bankruptcy petition does not invalidate the sale.

For the foregoing reasons, the Motion is ALLOWED except as to the Movant's request to

waive the ten day stay imposed by Fed. R. Bankr. P.                                          4001(a)(3)

which is DENIED.  A separate order will issue.


Dated; December 19, 2006                         _____

                                                 Joel B. Rosenthal
                                                 United States bankruptcy Judge